**AMERICAN HOME ASSURANCE COMPANY a/s/o Caterpillar Inc, Plaintiff,**

v.

**HAPAG LLOYD CONTAINER LINIE, GmbH; Danzas AEI Intercontinental; The Burlington Northern and Sante Fe Railway Company; and Matson Intermodal System, Defendants.**

No. 03 Civ. 5462(SAS).

United States District Court, S.D. New York.

March 23, 2005.

Edward C. Radzik, Lori J. Quinn, Dono-van Parry McDermott & Radzik, New York, NY, for Plaintiff American Home.

Ronald E. Joseph, William Cobb, Land-man, Corsi, Ballaine & Ford, New York, NY, for Defendant BNSF.

Michael J. Ryan, Hill, Betts & Nash, New York, NY, for Defendant Hapag Lloyd.

Edward Farman, Schindel, Farman and Lipsius, New York, NY, for Defendant Danzas.

John C. Koster, Thomas H. Belknap, Jr., Healy & Baillie, New York, NY, for Defendant Matson.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

This action arises from the loss of goods belonging to Caterpillar, Inc. ("Caterpillar") as a result of a train derailment. Plaintiff American Home Assurance Company ("American Home"), the subrogated insurer of the shipment, filed this breach of contract, bailment, and tort action against defendants Hapag Lloyd Container Linie, GmbH ("Hapag Lloyd"), Danzas AEI ("Danzas"), Matson Intermodal Systems ("Matson"), and Burlington Northern and Sante Fe Railway ("BNSF") on July 23, 2003, seeking to recover damages for the loss of Caterpillar's goods.

On July 19, 2004, this Court denied American Home's motion for partial summary judgment but granted partial summary judgment in favor of BNSF, ruling that BNSF is entitled to limit its liability to $1000.[1] Following negotiations among the parties, a Consent Judgment was entered on September 20, 2004, in which the parties stipulated and agreed that Hapag Lloyd and BNSF are liable to American Home jointly and severally for its damages of $1,000. But the Consent Judgment left open the question of whether Hapag Lloyd is entitled to indemnity from BNSF, including attorneys' fees.

On December 15, 2004, Hapag Lloyd filed this motion for summary judgment against BNSF for indemnification.

## II. BACKGROUND

Hapag Lloyd is a German corporation with its principal place of business in Germany.[2] In July of 2002, Caterpillar booked the shipment of two engines with its freight forwarder, Danzas, for transportation from Morton, Illinois, to Singapore.[3] Danzas contracted with Hapag Lloyd, with whom Caterpillar had a Service Contract, to arrange for the transportation from Lafayette, Indiana to Los Angeles and then to Singapore.[4] Hapag Lloyd engaged the services of Matson to arrange for the transportation from Chicago to Los Angeles.[5] Matson, in turn, employed BNSF to provide rail transportation.[6]

While en route from Chicago to Los Angeles, BNSF's train derailed, causing the total loss of Caterpillar's shipment.[7] At that time, the shipment was solely within the custody, possession and control of BNSF.[8]

In July 2003, American Home, as subrogee of Caterpillar, sued Hapag Lloyd and BNSF, seeking damages in the amount of $234,585.88. Hapag Lloyd answered the complaint and asserted a cross-claim for indemnity against BNSF.[9] On August 20, 2003, Hapag Lloyd sent a letter to BNSF tendering Hapag Lloyd's defense of the

---

1. See American Home Assurance Co. v. Hapag Lloyd Container Linie, No. 03 CV 5462, 2004 WL 1616379 (S.D.N.Y. July 19, 2004), as amended August 4, 2004.

2. See 11/15/04 Hapag Lloyd's Rule 56.1 Statement ("Def.56.1") ¶ 1.

3. See id. ¶ 3.

4. See 2/18/04 Letter from American Home to the Court at 1–2.

5. See Def. 56.1 ¶ 5.

6. See id.

7. See id. ¶ 6.

8. See id. ¶ 7.

9. See id. ¶ 9.

lawsuit to BNSF. BNSF never answered the tender.[10]

American Home moved for partial summary judgment, seeking to strike BNSF's limitation of liability defense. BNSF opposed American Home's motion and cross-moved for partial summary judgment on its right to limit liability. In July 2004, I denied American Home's motion for partial summary judgment and granted BNSF's cross-motion limiting its liability to $500 per package.

A Consent Judgment was entered in September 2004, finding Hapag Lloyd and BNSF jointly and severally liable to American Home for $1000 in damages. The judgment also provided for severance of the issue of indemnity as between Hapag Lloyd and BNSF.

Hapag Lloyd now moves for summary judgment, seeking indemnification from BNSF including the attorneys' fees and expenses Hapag Lloyd incurred in defending the underlying claims and in filing this motion. BNSF opposes Hapag Lloyd's motion, arguing (1) that it is not obligated to indemnify Hapag Lloyd because no ruling has ever been made as to BNSF's liability or negligence; and (2) even if BNSF is obligated to indemnify Hapag Lloyd, Hapag Lloyd is not entitled to recover its attorneys' fees and expenses.

## III. LEGAL STANDARD

A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[11] The court must view the evidence in the light most favorable to the non-moving party.[12] "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[13] A fact is material when it "might affect the outcome of the suit under the governing law."[14]

The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.[15] Once the moving party has met its burden, the nonmoving party must present specific facts showing that under the undisputed facts no reasonable judge or jury could find against the nonmoving party as a matter of law. That is, the non-moving party may not defeat summary judgment unless it submits specific facts showing that there is a material dispute of fact that must be resolved at trial.[16] Mere assertions or arguments are not "specific

10. *See* 12/15/04 Affidavit of Michael J. Ryan at 2 (Michael J. Ryan is Hapag Lloyd's counsel).

11. *See* Fed.R.Civ.P. 56(c).

12. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

13. *Electrical Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 117 (2d Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

14. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

15. *See Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.1987) (citing *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

16. *See* Fed.R.Civ.P. 56(e). *See also Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir.1986) (summary judgment granted to insurer because policyholder concealed or omitted material information in application); *Maslan v. American Airlines, Inc.*, 885 F.Supp. 90, 93 (S.D.N.Y.1995) (summary judgment available unless, when viewing evidence in light most favorable to nonmovant, need for trial established); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the opposing party must rebut by doing "more than simply showing that there is some metaphysical doubt as to the material facts").

facts."[17] When the non-movant's factual opposition is extremely weak or irrelevant, summary judgment is appropriate.[18]

## IV. DISCUSSION

The determination of whether to grant Hapag Lloyd's motion for summary judgment turns on three issues: *first*, whether summary judgment is appropriate where, despite the lack of a formal ruling on BNSF's liability, the shipment was lost while it was within the exclusive custody of BNSF and no evidence was provided negating the presumption of BNSF's negligence; *second*, whether Hapag Lloyd is entitled to recover the attorneys' fees and expenses it incurred in defending against American Home's claims; and *three*, whether the legal fees incurred in this indemnity dispute are recoverable by Hapag Lloyd.

### A. Indemnification

### 1. BNSF's Liability

BNSF argues that Hapag Lloyd's claim for indemnity is baseless because BNSF has never been found liable or negligent for the loss of Caterpillar's goods in any formal court ruling.[19] Except for the con-

sent judgment under which BNSF and Hapag Lloyd are jointly and severally liable for $1000 and the summary judgment limiting BNSF's liability to $1000, no other judgment has yet apportioned liability among the parties. BNSF implies that because the consent judgment is "a result of stipulation and agreement," it is not a "ruling" of this Court as to whether BNSF is liable.[20]

■ BNSF does not cite, nor has this Court found any authority to support BNSF's position. Consent judgments are more than merely stipulations and agreements of the parties; once these contracts are "reported to the court during the course of a trial or other significant courtroom proceeding" and a judgment is entered upon them, they are accorded "the status of a judicially enforceable decree." [21]

■ In the Consent Judgment entered by this Court on September 20, 2004, BNSF conceded its liability to plaintiff. BNSF has never disputed any term of the Consent Judgment. As a judicially enforceable decree, the terms of this consent judgment—namely, BNSF's concession of liability—bind BNSF in the adjudication of any remaining issue in the suit.[22]

---

**17.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**18.** *See, e.g., Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir.1970) (summary judgment granted against plaintiff who alleged defendants conspired to kidnap wife and alienate affections, enlisting the President of the United States, the C.I.A., the Army, and the "Allied School for Assassins" in purported plot).

**19.** *See* BNSF's Memorandum of Law in Support of Opposition to Motion for Summary Judgment ("BNSF Mem."), at 5, 6. BNSF's position is ambiguous. BNSF treats the lack of "any ruling on BNSF's liability" and "no determination of negligence" as interchangeable in explaining why Hapag Lloyd is not entitled to indemnity. But they are not interchangeable. BNSF may be liable to American Home even if it is not negligent. The

issue here is not whether BNSF is liable, but rather whether a reasonable trier of fact would find BNSF to be the primary wrongdoer, or to have acted negligently, with respect to the loss of the shipment.

**20.** *Id.*

**21.** *Janus Films, Inc. v. Herbert Miller*, 801 F.2d 578, 582–83 (2d Cir.1986).

**22.** *See e.g., Allied International American Eagle Trading Corp. v. S.S. "Yang Ming"*, 672 F.2d 1055, 1056 (2d Cir.1982) (trial on damages after liability conceded). The *Janus Films* court specifically distinguished a consent judgment from a settlement judgment. "With a 'settlement judgment' the parties have agreed on the components of a judgment, including the basic aspects of relief, but have not agreed on all the details or the

## 2. Summary Judgment Is Warranted with Respect to Indemnification

BNSF argues that Hapag Lloyd's motion for summary judgment should be denied because it has not been found to be negligent and the issue of what caused the derailment was never litigated.[23] Because there are no contractual provisions between BNSF and Hapag Lloyd with regard to the indemnification issue, Hapag Lloyd's indemnification claim must be analyzed under the common law principles of indemnification.[24] The Second Circuit has long recognized that a primary wrongdoer must indemnify a party whose liability is secondary or vicarious.[25] The question is thus whether, construing all facts in BNSF's favor, a reasonable juror could find that BNSF is the primary wrongdoer or acted negligently with respect to the shipment.

A reasonable juror could so find. In *Victoria Sales Corp. v. Emery Air Freight Inc.,*[26] the Second Circuit upheld a grant of summary judgment for indemnification to a freight forwarder against a carrier when the lost cargo was within the exclusive custody of the carrier and the carrier failed to raise any factual issue as to the freight forwarder's fault.[27] In that case, plaintiffs sued various carriers and freight forwarders for a loss of cargo contracted to be transported from Germany to the United States. As in the present case, a defendant freight forwarder, Lassen GmbH ("Lassen"), moved for summary judgment on its cross-claim for indemnification against a co-defendant carrier, Emery Air Freight, Inc. ("Emery"). The cargo had been entrusted in Emery's care for overseas shipment but never arrived in the United States. The district court granted the motion on the ground that all facts pointed to only one conclusion: any reasonable trier of fact would have found the plaintiff's loss arose out of the wrongful acts or omissions of the carrier.[28] The court noted that, where the only evidence submitted in opposition to summary judgment was an attorney's affidavit contradicting the conclusion that the cargo at issue was lost after it came into the possession and control of Emery, summary judgment was appropriate.[29] The Second Circuit affirmed the award, noting that:

> there is no dispute that the cargo was lost at Emery's warehouse, and Emery does not contend that the loss was the result of any fault on the part of Lassen. Lassen's liability for the loss, therefore, could be based only on its contractual obligation to ship the cargo to New York. Between Emery and Lassen, the former, as the party primarily liable for the lost cargo, must bear the loss, and

---

wording of the judgment." *Janus Films,* 801 F.2d at 582. Given the disagreement of the parties, a concession of one party as to liability is not an unqualified concession upon which a court may rely for all purposes in the adjudication of other issues in the suit. *See id.* Unlike the settlement judgment in *Janus Films,* in the instant case, BNSF does not dispute any term of the Consent Judgment.

**23.** *See* BNSF Mem. at 6.

**24.** *See Victoria Sales Corp. v. Emery Air Freight, Inc.,* 917 F.2d 705, 709 (2d Cir.1990).

**25.** *See Ingersoll Milling Machine Co. v. M/V BODENA,* 829 F.2d 293, 305 (2d Cir.1987)

("Indemnity rests upon the principle that the true wrongdoer should bear the ultimate burden of payment."); *McDermott v. City of New York,* 50 N.Y.2d 211, 216–17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980).

**26.** 917 F.2d 705.

**27.** *See Victoria Sales Corp.,* 917 F.2d at 709.

**28.** *See Victoria Sales Corp. v. Emery Air Freight, Inc,* No. 86 CV 1610, 1989 WL 76227, at *19 (S.D.N.Y. June 28, 1989).

**29.** *See id.*

Lassen consequently is entitled to indemnification.[30]

■ As in *Victoria Sales Corp.*,[31] BNSF does not raise any material factual dispute in opposition to Hapag Lloyd's motion for summary judgment. BNSF does not dispute the fact that the damaged goods were within its exclusive custody. BNSF does not provide any explanation as to the reasons for the derailment. Nor does BNSF raise any possibility that it might be Hapag Lloyd's fault that the goods were lost. BNSF submits only a copy of the contract [32] and a statement that suggests that Hapag Lloyd has failed to prove BNSF's liability and negligence. This is not sufficient to defeat summary judgment. Absent other factual issues, a trier of fact could reasonably believe that BNSF is the primary wrongdoer and must indemnify Hapag Lloyd for its loss.

## B. Attorneys' Fees and Expenses

### 1. Fees and Expenses Incurred in Defending Against the Original Claims

Hapag Lloyd seeks indemnification for attorneys' fees and expenses expended in this litigation, including those generated with respect to this motion as well as those generated in defending against American Home's claims.

"[I]n indemnity cases, the courts have regularly required the indemnitor to reimburse the indemnitee for the costs of defending the original suit." [33] The reasoning behind this rule is easy to understand. "Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims." [34] Legal fees and expenses incurred in defending the original claims are such costs and thus "fall squarely within the obligation to indemnify." [35] Nonetheless, a court may refuse to award attorney's fees if the case "presents unusual ... complexities" and "equitable principles" require it to do so.[36]

■ BNSF argues that even if Hapag Lloyd was an indemnitee, BNSF should not be required to pay for Hapag Lloyd's attorneys' fees because this case falls under the equitable exception.[37] Relying on *Demsey & Assoc., Inc. v. S.S. Sea Star*,[38] BNSF argues that this case also involves "unusual complexities" and therefore awarding attorneys' fees is inconsistent

---

**30.** *Victoria Sales Corp.*, 917 F.2d at 708. Although the Second Circuit vacated the District Court's judgment that the case was governed by the Warsaw Convention, it sustained the indemnity award based on common law principles of indemnification. *See id.* at 708 ("That portion of the district court's judgment awarding Lassen indemnification and attorney's fees and costs from Emery is affirmed. That portion of the district court's judgment limiting plaintiffs-appellees' recovery to $16,620 under the Warsaw Convention is vacated.")

**31.** 917 F.2d 705.

**32.** *See* Ex. A to 1/7/05 Declaration of Ronald E. Joseph, counsel to BNSF.

**33.** *Demsey & Assoc., Inc. v. S.S. Sea Star*, 500 F.2d 409, 411 (2d Cir.1974). *Accord Paliaga v. Luckenbach Steamship Co.*, 301 F.2d 403 (2d Cir.1962) (right to indemnification includes the right to indemnification for reasonable attorneys' fees and disbursements incurred by the shipowner in defending against the injured seaman's claims).

**34.** *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2d Cir.1985).

**35.** *Id.*

**36.** *Demsey*, 500 F.2d at 411 (refusing to award attorney's fees because the case "presents unusual if not unprecedented complexities").

**37.** *See* BNSF Mem. at 7.

**38.** 500 F.2d 409.

with "equitable principles."[39] However, there are no "unusual" or "unprecedented" complexities here as there were in *Demsey*. *Demsey* was a cargo damage case where "the cargo owners had been held off for some nine years while the energies of the various parties had been devoted chiefly to establishing that someone else was liable."[40] The trial did not begin until five years after the case was filed.[41] "In the interim, some eight different judges ruled on various motions in the case."[42] This case does not involve such a lengthy and painful history. The present case was filed in July 2003. Other than a ruling on the motion for summary judgment in July 2004 and the subsequent Consent Judgment, no other ruling has been entered by any judge. Furthermore, in *Demsey*, the court suspected that most of the legal fees were incurred either in prosecuting or defending against the claims of other defendants, rather than in defending the suit brought by the plaintiff.[43] Here, the only portion of attorneys' fees and expenses incurred by Hapag Lloyd in pursuing BNSF are the fees spent on this motion.

Because the unusual or unprecedented situations described in *Demsey* are not present here, the equitable exception does not apply. Hapag Lloyd is therefore entitled to recover the attorneys' fees and expenses it incurred in defending against American Home's claims.

## 2. Attorney's Fees Incurred in Filing this Motion

■■ Hapag Lloyd also seeks to recover the fees and expenses incurred in filing this motion for summary judgment. While an indemnitee may recover attorneys' fees incurred in defending against the original claims, the indemnitee is not entitled to indemnity for fees generated while prosecuting the cross-claim itself.[44] As stated earlier, the rationale for indemnity obligations is that the indemnitor must hold the indemnitee harmless from costs incurred as a result of indemnitor's wrongful conduct.[45] This reasoning does not apply to fees and expenses incurred in establishing the indemnity obligation. Such expenses are not part of the indemnified claim, but "are costs incurred in suing for a breach of contract, to wit, the failure to indemnify."[46] Fees and expenses incurred in establishing the indemnity obligation, therefore, "fall within the ordinary rule requiring a party to bear his own expenses of litigation."[47]

■ Relying on *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*,[48] Hapag Lloyd urges this Court to award attorneys' fees and expenses on the ground that BNSF acted in bad faith "as exhibited by its 'pursuit of frivolous contentions.'"[49]

---

**39.** *See* BNSF Mem. at 7 (citing *Demsey*, 500 F.2d at 411).

**40.** *Demsey*, 500 F.2d. at 410.

**41.** *See id.*

**42.** *Id.*

**43.** *See id.*

**44.** *See Paliaga*, 301 F.2d at 409 n. 1; *Rogers v. New Jersey Barging Corp.*, 567 F.Supp. 822, 831 (S.D.N.Y.1983) (holding that fees incurred exclusively in the indemnity/contribution dispute between co-defendants are not recoverable by the indemnitee).

**45.** *See Peter Fabrics*, 765 F.2d at 316.

**46.** *Id.*

**47.** *Id.* (citing Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U. Pa. L.Rev. 281, 281(1977)).

**48.** 782 F.2d 329 (2d Cir.1986).

**49.** Hapag Lloyd's Reply Memorandum of Law in Support of Motion for Summary Judgment at 8 (quoting *Dow Chemical*, 782 F.2d, at 345).

**324**

Generally, a prevailing party cannot recover attorneys' fees, but a court may award attorneys' fees to a "successful litigant when his opponent has commenced or conducted an action 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' "[50] "To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims," courts are generally reluctant to uphold awards under the bad-faith exception absent "clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes."[51]

 The evidence proffered by Hapag Lloyd does not meet this standard. BNSF's rejection of the tender of Hapag Lloyd's defense as to American Home's claims and its refusal to concede that it must indemnify Hapag Lloyd, does not amount to bad-faith pursuit of frivolous contentions. As the Second Circuit has recognized, whether a claim is colorable, for purposes of the bad-faith exception, is a matter of "whether a reasonable attorney could have concluded that facts supporting that claim *might be established,* not whether such facts actually *had been established.*"[52] BNSF was not obligated to provide a defense nor agree to indemnification, and BNSF may have reasonably believed that it might prevail on Hapag Lloyd's claim for indemnification. Thus, Hapag Lloyd is not entitled to recover the attorneys' fees it incurred in bringing this motion.

## V. CONCLUSION

For the foregoing reasons, Hapag Lloyd's motion for summary judgment is granted in part and denied in part. Hapag Lloyd is entitled to indemnification from BNSF for all attorneys' fees and expenses incurred in defending the claims of American Home, but it is not entitled to reimbursement for the fees and expenses it incurred in bringing this motion. The Clerk of the Court is directed to close this motion [# 51 on the docket] and this case.

SO ORDERED.

assertion that a defendant showed "a callous indifference to the law" from inception of the action to the day of trial without identifying any particular conduct was not sufficient to sustain an award of attorneys' fees under the bad-faith exception).

**50.** *Dow Chemical,* 782 F.2d at 344 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) (footnote omitted); *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982)).

**51.** *Weinberger,* 698 F.2d at 80 (quotation marks and citations omitted). *See also Dow Chemical,* 782 F.2d at 344 (finding that mere

**52.** *Id.* (quoting *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980) (emphasis in original)).