**DISTRIBUIDORA DIMSA S.A., Plaintiff,**

v.

**LINEA AEREA DEL COBRE S.A., d/b/a Ladeco, Defendant.**

**No. 90 Civ. 7156 (MBM).**

United States District Court, S.D. New York.

June 27, 1991.

David L. Mazaroli, Yorkston W. Grist, P.C., New York City, for plaintiff.

Stephen J. Fearon, Condon & Forsyth, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

This motion for summary judgment raises one issue: whether the defendant is barred from raising the liability limitation of the Warsaw Convention ("the Convention") under Article 9 of the Convention because the two air waybills accepted by defendant do not comply precisely with the requirements of Article 8. Plaintiff's motion to bar defendant's Affirmative Defense based on Article 9 of the Warsaw Convention is denied.

This case arises out of two shipments of electronic equipment from Florida to Chile. Plaintiff DIMSA was the consignee of the shipments, transported by defendant LINEA AEREA DEL COBRE S.A. d/b/a LADECO. Plaintiff alleges that the shipments were partially missing and damaged, and sues defendant for the full value of its consequent loss. The parties agree that the shipments in dispute moved by air from the United States to Chile, both of which are signatories to the Convention, and, accordingly, liability is governed by the Warsaw Convention.

Article 8 states in relevant part:
The air waybill shall contain the following particulars: ...
(h) The number of packages, the method of packing, and the particular marks or numbers upon them;
(i) The weight, the quantity, the volume, or dimensions of the goods;

*Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 1682 n. 4, 104 L.Ed.2d 113 (1989). Article 9 provides that:
If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit liability.

*Id.*, 109 S.Ct. at 1682–83 n. 4.

It is undisputed that although the air waybills governing the shipments at issue showed the weight of the two shipments and the number of pieces, there was no indication on either waybill as to the method of packing or as to particular marks or numbers on the packages. The air waybills also lacked information about the volume or dimensions of the shipments. The issue here is how, following the recent Supreme Court decision in *Chan, supra*, Article 8 is to be interpreted.

Prior to *Chan*, the law of the Second Circuit was clear that failure to comply with Article 8 did not prevent a carrier from limiting liability where the omissions were commercially insubstantial and non-prejudicial. *Exim Industries, Inc. v. Pan America World Airways, Inc.*, 754 F.2d 106, 108 (2d Cir.1985); *Republic National Bank v. Eastern Airlines, Inc.*, 815 F.2d 232 (2d Cir.1987). The air waybills in question in *Exim* were missing the method of packing, the numbers on the packages and a properly worded notice of the Warsaw Convention's applicability. Nevertheless, the Circuit held that the Convention applied to limit the defendant's liability. The Court reasoned that the omissions were technical and non-prejudicial to the plaintiff under the facts of the case. The plaintiff there, like plaintiff here, received adequate notice of the applicability of the Convention and its limitation on recovery for losses, and accordingly had an opportunity to pay a higher shipping rate in order to insure itself to the full value of the shipment. Having chosen not to do so and paid a lower rate, a plaintiff may not later claim that the waybills were technically defective in order to evade the loss limitations of the Convention.

The Second Circuit in *Exim* relied on the reasoning of an English case in the House of Lords to support its commercial reason-

ableness interpretation of Article 8 of the Convention. The English interpreted Article 8, sections (h) and (i), using two different texts, the official French text and the English translation. Determining that both texts were ambiguous, and that neither the English nor the French version, literally translated, made sense, the House of Lords relied on commercial reasonableness to fix the meaning of both sections. It held that "weight" is the measure that is generally most important, and therefore necessary whenever appropriate, and that so long as weight is given, the other particulars in section (i) need be listed only if they are necessary or useful in a particular case. The air waybill must include only those particulars in Article 8 which are "necessary or useful to determine the amount of the freight, or to determine any other condition upon which the parties were prepared to enter into the contract." *Corocraft Ltd. v. Pan American Airways, Inc.*, [1969] 1 Q.B. 616. The law Lords specifically acknowledged that they were not applying a literal interpretation of either the French or the English text. *Id.* at 672; *see also id.* at 675 (Widgery, L.J., concurring). The Second Circuit adopted this approach in *Exim*, 754 F.2d at 108, and reaffirmed it in *Republic National*, 815 F.2d at 238.

In *Chan*, the Supreme Court resolved a conflict in circuit decisions over whether air carriers must give their passengers clearly legible notice that the Convention applies before those carriers may limit their liability under Article 3 of the Convention, which reads in relevant part as follows:

(1) For the transportation of passengers the carriers must deliver a passenger ticket which shall contain the following particulars:

. . . .

(e) A statement that the transportation is subject to the rules relating to liability established by this convention.

(2) The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.

*Chan*, 109 S.Ct. at 1679–80.

Rejecting the view of this Circuit and others which held that the ticket had to provide clearly legible notice, the Court reasoned as follows: "We cannot accept this interpretation. All that the second sentence of Article 3(2) requires in order to avoid its sanction is the 'deliver[y]' of 'a passenger ticket.' Expanding this to mean 'a passenger ticket in compliance with the requirements of this Convention' is rendered implausible by the first sentence of Article 3(2), which specifies that '[t]he ... irregularity ... of the passenger ticket shall not affect the existence of the validity of the contract of transportation, which shall none the less be subject to the rules of this convention.'" *Id.*, 109 S.Ct. at 1680.

The Court found further support for its interpretation by contrasting Section I, which contains Article 3, with Sections II and III, which contain Articles 4 and 8 respectively: "But, *unlike Section I*, Sections II and III also specifically impose the latter sanction [elimination of a defense based on clauses limiting or excluding liability] for failure to include in the documents certain particulars." *Id.* at 1682 (emphasis in original). "We must thus be governed by the text—solemnly adopted by the government of many separate nations—whatever conclusions might be drawn from the intricate drafting history that petitioners and the Solicitor General have brought to our attention. The latter may of course be consulted to elucidate a text that is ambiguous.... But where the text is clear, as it is here, we have no power to insert an amendment. As Justice Story wrote for the Court more than a century and a half ago:

'[T]o alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not

an exercise of judicial functions. It would be to make, and not to construe a treaty. Neither can this Court supply a *casus omissus* in a treaty, any more than in a law. We are to find out the intention of the parties by just rules of interpretation applied to the subject matter; and having found that, our duty is to follow it as far as it goes, and to stop where that stops—whatever may be the imperfections or difficulties which it leaves behind.'"

*Id.* at 1683–84.

Although several Second Circuit Warsaw Convention cases have been decided since *Chan,* none has required the majority of the Court to determine whether the Supreme Court's holding in *Chan* has affected the *Exim* line of cases. Judge Van Graafeiland reached that issue in dissent in *Victoria Sales Corp. v. Emery Air Freight, Inc.,* 917 F.2d 705 (2d Cir.1990), and found that *Chan* did not overrule *Exim.* The majority did not have occasion to consider the issue, having found that the district court erred in determining that the Convention applied at all, because the loss in dispute occurred at an airport warehouse a short distance outside the perimeters of the airport, rather than inside it.

Although the *Emery* majority did not specifically reexamine the *Exim* line of cases, its reasoning bears somewhat on the issue at hand. The majority recognized the commercial realities of modern day airports, where airport warehouses may be located just outside the perimeters rather than in it, but then wrote: "Although cognizant of the commercial realities that may force the location of a warehouse outside of the actual confines of an airport, we must reject the proposed interpretation of Article 18 because it has no support in the language of the Convention. Our interpretation of Article 18 must begin 'with the literal language of the provision. . . . Furthermore, when the text of a treaty is clear, a court shall not, through interpretation, alter or amend the treaty.'" *Id.,* 917 F.2d at 707 (citing *Chan* ).

At first glance, the Circuit's reasoning in *Emery* appears to contradict, and therefore implicitly to overrule, its reasoning in *Exim.* The Court adhered strictly to the text of the Convention rather than construe it to reflect commercial realities. However, when further considered, the Circuit's opinion in *Emery* does not conflict with *Exim.* The provision of the Convention construed in *Emery* was unambiguous. Construction of the provision to reflect considerations other than its text meant rewriting the treaty, a task not vouchsafed to the judiciary. *Exim* involved an interpretation of provisions that are ambiguously drafted. Interpretation of an ambiguous treaty provision necessarily requires consideration of factors other than its text. *Emery* does not therefore compel a finding that the reasoning of *Exim* has been implicitly overruled.

█ A district court has no authority to reject a doctrine developed by a higher court unless subsequent events make it "almost certain that the higher court would repudiate the doctrine if given a chance to do so." *Olson v. Paine, Webber, Jackson & Curtis, Inc.,* 806 F.2d 731, 734 (7th Cir. 1986). I believe that because there are grounds to find that the Supreme Court's decision in *Chan* would not cause the Second Circuit to reexamine its interpretation of Article 8, sections (h) and (i), I am bound to find that the waybills in dispute here do contain all of the particulars required by that Article, and that defendant may therefore invoke the limitations on liability of the Warsaw Convention.

Unlike the provisions of the Warsaw Convention interpreted in *Chan* and in *Emery,* and despite the apparent clarity of the text of sections (h) and (i) as cited, but not ruled on, in *Chan,* both sections are ambiguously drafted. Although the English translation of section (h) states unequivocally that the waybill must include the number, method of packing *and* either the particular marks or numbers upon them, "[b]ecause the only authentic text of the Warsaw Convention is in French, the French text must guide our analysis." *Eastern Airlines, Inc. v. Floyd,* — U.S. ——, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569

(1991). The official French text is as follows:

(h) Le nombre, le mode d'emballage, les marques particulieres ou les numeros des colis.

(i) Le poids, la quantitie, le volume ou les dimensions de la marchandise.

*Corocraft, supra,* at 667.[1] The official French text contains the conjunction "ou" or "or," which has made the text susceptible to various reasonable interpretations, including that the "or" connotes a choice only between the last two listed alternatives while the first two are required, or that any of the listed alternatives is sufficient. *See Corocraft v. Pan American Airways,* [1969] 1 Q.B. 622, 1969 U.S.Av.R. 676, 691–92, *rev'd* [1969] 1 Q.B. 616. Absent binding precedent to the contrary I would be inclined to interpret both sections to require inclusion of three of the four particulars. "Volume" and "dimensions" operate as alternative means for giving essentially equivalent information, just as a package can reasonably be described by either "particular marks" or "numbers" on it. On the other hand, to my mind, the other particulars required by these sections do not operate as alternatives. Each conveys information not provided by the others. Therefore, I would interpret sections (h) and (i) to require only three of the four particulars listed: the first two, and a choice, depending upon the circumstances, between the final two—in other words, I would read the clause as if the conjunction "or" applied only to the final two particulars; both sections should have been translated to include the conjunction "and" between the second and third particulars. Nevertheless, either section can reasonably be read wholly in the disjunctive—that is, to require only one of the four particulars mentioned in each section.

The Supreme Court recently reaffirmed the principle that when passages are ambiguous, "treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Eastern Airlines,* 111 S.Ct. at 1493.

Achieving international uniformity in rules governing claims arising from air transportation was the stated objective of the Convention. *Id.,* 111 S.Ct. at 1502; *see Reed v. Wiser,* 555 F.2d 1079 (2d Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); *Denby v. Seaboard World Airlines, Inc.,* 737 F.2d 172, 175 (2d Cir.1984). If this Court were to adopt a construction of Article 8, sections (h) and (i), that required that all of the particulars mentioned in those sections be included in air waybills before the loss limitation provisions of the Convention could be invoked, that construction would put this country in conflict with many other signatories of the Convention. *See Corocraft, supra; Dico Handel-en Industrie Mij. N.V. v. Garuda Indonesian Airways, P.N.,* No. 83 Schip en Schade 1970, 199 (Dist.Ct. Amsterdam, Oct. 29, 1969); *Black Sea & Baltic General Insurance Co. Ltd. v. Scandinavian Airlines System* (Zurich High Court, 2d Civ. Chamber (March 4, 1966)). Inconsistency of interpretation is particularly undesirable where, as here, the decision affects commercial behavior; despite less demanding interpretations of these sections prevailing elsewhere, parties who deal with U.S. shippers would be forced to conform to the stricter standard, in anticipation of being sued in courts where U.S. law applies.

If this result were required by the text, the issue would be one for Congress and not the court. The text, however, does not demand such an interpretation. When possible, interpretations that yield anomalous results should be avoided. *National Foods, Inc. v. Rubin,* 936 F.2d 656 (2d Cir.1991). Faced with an ambiguous text and the international acceptance accorded the interpretation adopted in *Exim,* I can-

---

**1.** The English translation, p. 1 *supra,* was as follows:

(h) The number of packages, the method of packing, and the particular marks or numbers upon them;

(i) The weight, the quantity, the volume, or dimensions of the goods;

not and do not find that *Chan* has had the effect of overturning *Exim.*

\* \* \* \* \* \*

For the reasons discussed above, plaintiff's motion for partial summary judgment striking defendant's affirmative defenses based on the applicability of Article 9 of the Warsaw Convention is denied.

SO ORDERED.