### DISTRIBUIDORA DIMSA S.A., Plaintiff,

v.

### LINEA AEREA DEL COBRE S.A. d/b/a Ladeco, Defendant.

### No. 90 Civ. 7156 (MBM).

United States District Court, S.D. New York.

Feb. 26, 1992.

David L. Mazaroli, Yorkston W. Grist, P.C., New York City, for plaintiff.

Stephen J. Fearon, Condon & Forsyth, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

On June 27, 1991 I denied plaintiff's motion for partial summary judgment striking a defense based on the liability limitation in Article 9 of the Warsaw Convention (the "Convention"), and in so doing found that this case is governed by the Second Circuit's holding in *Exim Industries, Inc. v. Pan American World Airways, Inc.*, 754 F.2d 106 (2d Cir.1985), which remains good law even after *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). Familiarity with that earlier opinion, reported at 768 F.Supp. 74, is assumed for current purposes. The case is before the court again after the Court of Appeals dismissed without prejudice plaintiff's motion for an immediate appeal pursuant to 28 U.S.C. § 1292(b)[1] and remanded the case for a decision on whether the information called for by Article 8 of the Convention but omitted from the waybills in question here was "commercially insubstantial or insignificant and non-prejudicial" within the meaning of *Exim*. For the reasons set forth below, I find that the omitted information was "commercially insubstantial or insignificant and non-prejudicial," and adhere to the prior decision denying partial summary judgment.

The two waybills governing the shipments with which we are concerned—videocassette recorders, or VCR's—showed the weight of the two shipments and the number of pieces, but did not reflect the method of packing, the particular marks or numbers on the packages, or the volume or dimensions of the shipments. Defendant has submitted the affidavit of Colin Mills, Assistant Director of Cargo Services Development for the International Air Transportation Association ("IATA"), who avers that the method of packing is significant only when the consignment includes hazardous materials. (Mills Aff. ¶ 13) He states also that numbering on the packages may be "of some convenience" to shippers or consignees, but that only the total number of pieces and their gross weight is of importance to the air carrier; he notes that the number of pieces and the weight was contained on these waybills, and that the apparent absence of numbers on individual pieces of each consignment tends to suggest that such information was not material to anyone in the chain of distribution. (*Id.* ¶ 16) Finally, he notes that volume or dimensions may be significant when dealing with a shipment that deviates from a usual density or size norm, such as a shipment of styrofoam that may be quite large but weight relatively little, or an oddly shaped object such as a sailboat mast: in both cases, dimensions might prevent shipment on certain kinds of aircraft. Here, however, there was nothing unusual about either the volume or the size of the items that comprised the shipment. (*Id.* ¶¶ 17–19)

In addition, defendant has submitted two further affidavits which show that the ship-

---

**1.** The relevant portion of that section provides as follows: "(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may material- ly advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order."

per provided no information beyond what appeared on the waybills, and thereby suggest strongly that further information—in particular information about packing, numbering, size and volume—was not significant.

Plaintiff has responded with a series of arguments, some of which are irrelevant to the issue to be decided and others of which prove more than helps plaintiff's own position. Thus, plaintiff argues that other international agreements and rules apart from the Convention contain clauses similar to those at issue here, requiring that certain identifying information appear on carriage documents. *See:* Convention on the Contract for International Carriage of Goods by Road (CMR) done at Geneva on May 19, 1956, Article 6, 399 U.N.T.S.1961; International Convention for the Unification of Certain Rules Relating to (Ocean) Bills of Lading signed at Brussels on August 25, 1924, Article III, Sec. 3; Carriage of Goods by Sea Act of the United States ("COGSA"), 46 U.S.C.App. § 1303(3). To the extent plaintiff relies on a convention relating to carriage of goods by road, which provides for a document called a "consignment note" that apparently serves the function of the waybills at issue here, there is no showing that that convention is to be construed *in pari materia* with the Convention, or that the concept of commercial insignificance does not inform interpretations of that convention as well. That convention provides explicitly that, "[t]he absence, irregularity or loss of the consignment note shall not affect the existence or the validity of the contract of carriage which shall remain subject to the provisions of this Convention." Both the convention on ocean bills of lading and the cited section of COGSA provide that specified information is to be included on the bill of lading "as the same are furnished in writing by the shipper." Here, the evidence reflects that the shipper did not furnish the missing information, in writing or otherwise.

Plaintiff presents also the view of certain counsel and air carriers that after *Chan* all information listed in the Convention should appear on waybills. Such caveats on how to avoid liability are of little use or relevance to a court trying to decide whether to impose it.

Further, plaintiff has presented the affidavit of a cargo surveyor who contends that the omitted information as to packing, markings and volume or dimensions could be "extremely important for the processing, handling, identification, and, if necessary, tracing of any shipment moving in international air commerce." That affidavit, however, does not show how the missing information could have been significant in this case, beyond the obvious postulate that the more information one has about a missing package the easier it may be to find. But that was true as well in *Exim*, where the Court found such omitted information to have been commercially insignificant. 754 F.2d at 108. Thus plaintiff's argument here would include, and contradict, the result in *Exim*, and accordingly cannot be accepted. Plaintiff argues also that because defendant has not explained what happened to the shipment, no one can tell what information would have been commercially significant. That argument falsely equates commercial significance with tendency to facilitate recovery of lost objects, an equation *Exim* instructs us not to draw. Such information, after all, would have been just as useful, or useless, in locating the blouses missing in *Exim* as in locating the VCR's missing here.

Finally, plaintiff attacks defendant's IATA expert as motivated by a pro-airline bias. So he may be, but nothing in the facts of this unremarkable cargo loss case suggests that the omitted information was any more critical than the identical information omitted in *Exim* and found there to have been commercially insignificant.

For the above reasons, the information omitted from the waybills was commercially insubstantial or insignificant and nonprejudicial within *Exim*, and plaintiff's motion for partial summary judgment is denied.

SO ORDERED.