**DISTRIBUIDORA DIMSA,**
Plaintiff–Appellant,

v.

**LINEA AEREA DEL COBRE S.A.,**
doing business as Ladeco,
Defendant–Appellee.

**No. 1755, Docket 92–7341.**

United States Court of Appeals,
Second Circuit.

Argued June 19, 1992.

Decided Sept. 24, 1992.

David L. Mazaroli, New York City (Law Offices of Yorkston W. Grist, P.C., of counsel), for plaintiff-appellant.

Stephen J. Fearon, New York City (Virginia Loughran, Condon & Forsyth, of counsel), for defendant-appellee.

Before MESKILL, KEARSE, and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant Distribuidora Dimsa S.A. ("Dimsa") appeals from an order entered February 26, 1992 in the United States District Court for the Southern District of New York (Mukasey, *J.*) denying Dimsa's motion for partial summary judgment. *Distribuidora Dimsa S.A. v. Linea Aerea Del Cobre S.A.*, 785 F.Supp. 49 (S.D.N.Y.1992) (*"Dimsa II"*). In its complaint, Dimsa alleged damage to and loss of goods transported by defendant-appellee Linea Aerea Del Cobre S.A. ("Ladeco") and

sought money damages. Ladeco denied the allegations and asserted several affirmative defenses. Dimsa made the motion for partial summary judgment resulting in the order giving rise to this appeal for the purpose of striking one of Ladeco's affirmative defenses. The defense was based on the limitation of liability provided in Article 22 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in,* 49 U.S.C. app. § 1502 note (hereinafter "Warsaw Convention" or "Convention"). Dimsa argued that Ladeco should not be entitled to avail itself of the liability limitation because the air waybills completed for the shipments did not conform to the Convention's requirements and that the affirmative defense therefore should be stricken. The district court disagreed, concluding that the Convention did not impose an absolute requirement that the particulars omitted from the air waybills be included and hence that the affirmative defense should not be barred. *Dimsa II,* 785 F.Supp. at 51.

The district court had earlier denied the motion for summary judgment. *Distribuidora Dimsa S.A. v. Linea Aerea Del Cobre S.A.,* 768 F.Supp. 74 (S.D.N.Y.1991) ("*Dimsa I*"). In its earlier ruling on the motion the court refused to strike the affirmative defense of limited liability, citing as authority our determination in *Exim Indus., Inc. v. Pan American World Airways, Inc.,* 754 F.2d 106 (2d Cir.1985), that omissions from waybills destroy the liability limitation only when the omissions are commercially substantial or significant and prejudicial to the consignor. The district court rejected Dimsa's argument that several recent decisions had overruled *Exim,* but did not rule on whether the omitted particulars in issue were commercially insubstantial or insignificant and nonprejudicial. *Dimsa I,* 768 F.Supp. at 77.

The district court then certified for interlocutory appeal the question of *Exim's* continued vitality. We denied Dimsa's motion for permission to appeal, but granted leave to renew the motion upon a ruling from the district court as to whether the omitted

particulars were commercially insubstantial or insignificant and nonprejudicial. Pursuant to our order, the district court reconsidered the summary judgment motion in light of the *Exim* standard and concluded that the omissions were commercially insubstantial or insignificant and nonprejudicial. *Dimsa II,* 785 F.Supp. at 51. Based on this conclusion, the district court confirmed its earlier denial of Dimsa's motion for summary judgment and issued the order appealed from.

On appeal, Dimsa argues that, in light of several more recent decisions, the district court erred in concluding that *Exim* is still good law. Dimsa principally contends that these newer decisions require a "plain language" interpretation of the Warsaw Convention and that the portion of the Warsaw Convention relevant to this appeal unambiguously requires inclusion of certain particulars in each waybill, regardless of their commercial significance. The waybills at issue did not include some of the particulars Dimsa asserts are mandatory. Dimsa also claims that *Exim* was wrongly decided because the decision flouted the plain meaning of the Convention by adding a requirement that omissions must be commercially substantial or significant and prejudicial to the consignor in order to destroy the liability limitation. Dimsa alternatively disputes the district court's holding that the omissions from the waybills were commercially insubstantial or insignificant and nonprejudicial omissions within the meaning of *Exim.*

Ladeco counters that nothing in the more recent decisions casts doubt on *Exim's* holding, that *Exim* remains good law, and that the district court properly determined that the omitted particulars were without commercial significance or prejudice to Dimsa. We hold that no intervening case has overruled *Exim,* which remains the law of this circuit, and that the district court did not err in concluding that the omissions from the air waybills were commercially insubstantial or insignificant and nonprejudicial.

## BACKGROUND

In April 1989, Dimsa contracted with Ladeco for the transportation of two shipments of video cassette recorders ("VCRs") from Florida to Chile. Upon receipt of the consignments in Florida, Ladeco completed separate air waybills for each. Article 8 of the Convention requires that a waybill accompany each shipment of goods and sets forth the particulars to be included in the waybill. In the original French, Article 8 provides, in pertinent part, for the inclusion in the waybill of: "h) le nombre, le mode d'emballage, les marques particulières ou les numéros des colis; i) le poids, la quantité, le volume ou les dimensions de la marchandise." The American translation of these subsections is as follows: "(h) The number of packages, the method of packing, and the particular marks or numbers upon them; (i) The weight, the quantity, the volume, or dimensions of the goods." The waybills here recorded the total weight of, and the number of pieces in, the respective shipments. None of the other particulars from subsections (h) and (i) was logged in the waybills. Ladeco transported the VCRs by air to Chile, where Dimsa took possession of them. Upon receipt, according to the complaint in this action, Dimsa discovered that some of the VCRs from the shipments were damaged and others were missing.

Answering Dimsa's complaint for the recovery of its losses, Ladeco asserted, among other things, the affirmative defense of the limited liability afforded international air carriers under Article 22 of the Warsaw Convention. The Convention permits carriers engaged in the international transportation of goods by air to limit their liability for lost or damaged goods, Warsaw Convention Art. 22(2), if a properly completed air waybill accompanies the shipment, *id.* Art. 9. Dimsa moved in the district court for partial summary judgment to strike this affirmative defense. Dimsa argued that the air waybills did not include all the information required by the Warsaw Convention and therefore that Ladeco was not entitled to limit its liability. Thus, Dimsa contended, Ladeco should be barred from asserting the affirmative defense.

The district court denied Dimsa's motion for partial summary judgment, concluding that, under *Exim Indus., Inc. v. Pan American World Airways, Inc.*, 754 F.2d 106 (2d Cir.1985), Article 9 is not violated by the omission of commercially insubstantial or insignificant and nonprejudicial particulars from air waybills, and that the affirmative defense based on the Warsaw Convention properly was raised. *Dimsa I*, 768 F.Supp. at 77–78. The district court found *Exim* controlling because *Exim* also involved two putatively incomplete air waybills, one lacking a designation of the method of packing and the numbers on the packages, and the second lacking the volume and dimensions of the cargo. *Exim*, 754 F.2d at 108. In so ruling, the district court rejected Dimsa's argument that, in light of several subsequent decisions, *Exim* was no longer good law. The district court then certified for interlocutory appeal, 28 U.S.C. § 1292(b), the issue of *Exim*'s continued viability. When Dimsa moved in this Court pursuant to Fed.R.App.P. 5 for permission to appeal, we denied the motion "without prejudice to renewal after a determination of the district court of the issue whether the omissions in the air waybills in question were commercially insubstantial or insignificant and non-prejudicial within *Exim*."

The district court accepted submissions from the parties on the issues of commercial substantiality, significance, and prejudice. After reviewing these materials, the court reaffirmed its denial of partial summary judgment and determined that the omissions from the waybills were commercially insubstantial or insignificant and nonprejudicial within the meaning of *Exim*. *Dimsa II*, 785 F.Supp. at 51. Dimsa moved again for leave to appeal, which motion we granted in accordance with our earlier ruling.

## DISCUSSION

■ The Warsaw Convention governs, *inter alia*, international transportation of goods by air. When transported goods are

lost or damaged, the Convention presumes the carrier liable, but limits the permissible amount of recovery. Specifically, Article 22(2) provides that "[i]n the transportation ... of goods, the liability of the carrier shall be limited to a sum of [$20] per kilogram [$9.07 per pound], unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires." This limitation of liability does not apply, however, "[i]f the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q)...." Warsaw Convention Art. 9. In such cases, the carrier is not "entitled to avail himself of the provisions of this convention which exclude or limit his liability," so recovery is unlimited by the Convention. *Id.; see Exim,* 754 F.2d at 107–08; *Maritime Ins. Co. v. Emery Air Freight Corp.,* 769 F.Supp. 126, 127–28 (S.D.N.Y.1991). Dimsa contends that the waybills in issue omitted several of the particulars required by Article 8(h) and (i), thereby rendering the waybills incomplete for purposes of Article 9. This in turn would trigger Article 9's removal of the Convention's liability limitation such that Ladeco could not invoke it as an affirmative defense. Ladeco argues, and the district court agreed, that the missing particulars need not have been included in the waybills under our holding in *Exim,* because the omitted particulars were commercially insubstantial or insignificant and nonprejudicial. *Exim,* 754 F.2d at 108.

While it is clear from Article 9 that certain of the Article 8 particulars must be contained in the waybill in order for limited liability to obtain, we determined in *Exim* that Article 8 does not make clear which particulars listed in subsections (h) and (i) must be contained in the waybill. *Id. Exim* resolved this issue by holding that only the particulars whose omission would be commercially substantial or significant and prejudicial to the consignor must be set out. *Id.; Maritime Ins.,* 769 F.Supp. at 128–29 (following *Exim* to hold omissions from waybill commercially insubstantial

and permit liability to be limited); *see also Republic National Bank of N.Y. v. Eastern Airlines, Inc.,* 815 F.2d 232, 237 (2d Cir.1987) (relying on *Exim* in ruling that customer baggage claim check need only include particulars whose omission would be commercially substantial or significant and prejudicial to passenger, and charging sophisticated traveller with knowledge of Warsaw Convention). In accordance with *Exim,* the district court here ruled that the particulars omitted from these waybills were commercially insubstantial or insignificant and nonprejudicial and thus their omission was not sufficient to deprive Ladeco of its ability to assert the Convention's limitation-of-liability defense. Dimsa attacks this holding in two ways; first, by arguing that *Exim* is not good law, and second, by claiming that in any event the omissions were commercially substantial or significant and prejudicial to it. We address these contentions in turn.

### A. The Status of Exim

Dimsa argues that the Supreme Court *sub silentio* overruled *Exim* in *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). Dimsa also points us to our own post-*Chan* decision in *Victoria Sales Corp. v. Emery Air Freight, Inc.,* 917 F.2d 705 (2d Cir.1990), as further support for the proposition that *Exim* is no longer good law. *Chan* addressed a question regarding the required form of a passenger ticket under the Warsaw Convention, as modified by the Montreal Agreement. *Chan,* 490 U.S. at 125–26, 109 S.Ct. at 1679–80. The focus of the case was whether Article 3 of the Convention permitted a carrier to retain the benefit of limited liability after delivering a passenger ticket with undersized typeface. *Id.* at 126–28, 109 S.Ct. at 1679–81. The Supreme Court ruled that the carrier was entitled to limited liability, reasoning that the plain language of Article 3 dictated the result. *Id.* at 128–29, 109 S.Ct. at 1680–81. *Chan* also compared the liability limitation scheme of Article 3 with the schemes of Article 4 (limiting the carrier's liability for lost luggage if a baggage claim check is

delivered to the passenger) and of Articles 8 and 9. The Court noted that all the Articles "provide ... that if the relevant document (ticket, baggage check or air waybill) has not been delivered (or, in the case of air waybill, 'made out'), the carrier 'shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.'" *Id.* at 131, 109 S.Ct. at 1682. The Court then explained the crucial distinction between the provisions of Article 3 and the provisions of Articles 4, 8 and 9: "But, *unlike* [Article 3, the other Articles] specifically impose the latter sanction [i.e. removal of limited liability] for failure to include in the documents certain particulars...." *Id.* The differing language of Article 3 indicated to the Court that the Convention did not intend for the delivery of a passenger ticket with undersized typeface to affect the limit on recovery. *Id.* at 132–33, 109 S.Ct. at 1683.

Like *Chan, Victoria Sales* dealt with the interpretation of an Article not implicated here. There, transported goods were lost at the carrier's warehouse, some distance from the airport. *Victoria Sales*, 917 F.2d at 707. The carrier argued that under the Convention it should be entitled to limit its liability for the loss. Interpreting Article 18, the majority concluded that limited liability could only be invoked for losses or damage occurring within the physical confines of the airport. *Id.* at 707–08. The majority rejected the idea that Article 18 "must be viewed in the light of modern commercial realities" and held that the plain language of Article 18 permits a carrier to limit liability only as to events occurring on airport grounds. *Id.* at 707.

Obviously, neither of these cases directly overrules *Exim.* Both interpreted other provisions of the Convention and did not address either Articles 8 and 9 or *Exim*'s holding. While *Chan* did compare Article 3 to Articles 8 and 9 for purposes of elucidating Article 3, *Chan,* 490 U.S. at 130–33, 109 S.Ct. at 1681–83, the discussion did not relate to the issue of which particulars must be stated in a waybill or refer to *Exim.* In *Victoria Sales,* the majority opinion did not discuss the meaning of Articles 8 and 9 or allude to *Exim. Victoria*

*Sales,* 917 F.2d at 706–08. The only mention of *Exim* in either case comes in Judge Van Graafeiland's partial dissent in *Victoria Sales.* In connection with his analysis of the case, Judge Van Graafeiland examined *Chan*'s holding and specifically concluded that *Chan* did not overrule *Exim. Id.* at 711–12 (Van Graafeiland, *J.,* concurring in part and dissenting in part).

Dimsa's argument that *Exim* was overruled focuses on the general principle of treaty interpretation invoked in both *Chan* and *Victoria Sales:* that a treaty should be interpreted according to its plain language. *Chan,* 490 U.S. at 134, 109 S.Ct. at 1683–84 ("where the text is clear, as it is here, we have no power to insert an amendment"); *Victoria Sales,* 917 F.2d at 707 ("when the text of a treaty is clear, a court shall not, through interpretation, alter or amend the treaty") (citing *Chan*). Dimsa argues that *Exim* violated this maxim of treaty interpretation by engrafting the condition that to be required in the waybill the particulars must be commercially substantial or significant and prejudicial, thereby impermissibly amending the Convention. This argument flows from Dimsa's interpretation of subsections (h) and (i) and its claim that its interpretation arises from the clear and unambiguous text of the subsections. Thus, Dimsa argues that *Exim* is in conflict with the holdings in *Chan* and *Victoria Sales* because *Exim* found the clear language of Article 8 to be ambiguous.

■ According to the rule in *Chan,* the plain language of a treaty must be followed, but only if the language is unambiguous or if the plain meaning does not produce "necessarily absurd" results. *Chan,* 490 U.S. at 130, 134, 109 S.Ct. at 1681–82, 1683. The rule recognizes that treaties, like other documents, occasionally are not drafted with such clarity as to remove all ambiguity or doubt as to the meaning of certain provisions. In such instances, it is entirely appropriate to "look beyond the written words" in order to divine the meaning of the ambiguous provision. *Eastern Airlines, Inc. v. Floyd,* — U.S. —, —, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991) (quoting *Air France v. Saks,* 470 U.S. 392,

396, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985) (quoting *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 431–32, 63 S.Ct. 672, 678, 87 L.Ed. 877 (1943))). Thus, other rules of construction may be utilized to illuminate such passages. *Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 2108, 100 L.Ed.2d 722 (1988)). It must also be kept in mind that "[t]reaties are construed more liberally than private agreements," *Saks*, 470 U.S. at 396, 105 S.Ct. at 1341 (quotation omitted), and that "the opinions of our sister signatories [interpreting the Convention are] entitled to considerable weight," *Saks*, 470 U.S. at 404, 105 S.Ct. at 1345 (quotation omitted); *see Floyd*, —— U.S. at ——, 111 S.Ct. at 1493.

In light of these principles of treaty interpretation, *Chan* and *Victoria Sales* do not dictate a result contrary to *Exim*. *Exim* held that subsections (h) and (i) are ambiguous, and we therefore applied interpretive techniques to give them meaning. *Exim*, 754 F.2d at 108. The result rested not only on our own finding of ambiguity and construction of the subsections, but also on the holdings of British, Swiss, and Dutch courts. *Id.* (citing *Corocraft Ltd. v. Pan American Airways, Inc.*, [1969] 1 Q.B. 616; *Dico Handel-en Industrie Mij. N.V. v. Garuda Indonesian Airways, P.N.*, No. 83 Schip en Schade 1970, 199 (Dist.Ct. Amsterdam, Oct. 29, 1969); *Black Sea & Baltic General Ins. Co. v. Scandinavian Airlines System* (Zurich High Court, 2d Civ. Chamber Mar. 4, 1966)). These are the courts of nations which are parties to the Convention, and we give their constructions "considerable weight." *Saks*, 470 U.S. at 404, 105 S.Ct. at 1345.

Even were we free to disregard this overwhelming precedent, we would not do so here, because even a cursory review of the original French text and its translation exposes the ambiguity recognized by *Exim* and the foreign courts. We turn first to the original French version of the Convention which, as the only authentic version, must guide any analysis. *Floyd*, —— U.S. at ——, 111 S.Ct. at 1493; *Saks*, 470 U.S.

at 397, 105 S.Ct. at 1341. Subsection (h), in the original French, states that the waybill shall contain "le nombre, le mode d'emballage, les marques particulières ou les numéros des colis." The unofficial American translation reads "The number of packages, the method of packing, and the particular marks or numbers upon them." Notable in a comparison of the two is the American version's addition of the word "and" after the word "packing,". Subsection (i) in the original requires the listing of "le poids, la quantité, le volume ou les dimensions de la marchandise." As translated, the subsection reads "The weight, the quantity, the volume, or dimensions of the goods." Here the American version adds a comma after "volume" and deletes the word "the" before the word "dimensions".

This comparison makes the ambiguity apparent. First, the original French can be read either disjunctively or conjunctively as is evidenced by the subsection (h) translation's addition of the word "and" after the second particular, something not done in the translation of subsection (i). Further confusion over disjunctive versus conjunctive use is evident from the British translation, which adds the word "and" after the second particular in both subsections. *Corocraft Ltd. v. Pan American Airways*, [1969] 1 Q.B. 616, 650. This difference from the American translation highlights the difficulty of determining the proper meaning of the French. Additionally, a literal translation of the French supports a strictly disjunctive reading because of the lack of the word "and" within either string, the use of the word "or" at the end of the list, and the fact that each particular is preceded by the French equivalent of the word "the" in the original. The strict disjunctive interpretation of the French text, which finds support from Professor Drion in his treatise on the Convention, *see* H. Drion, *Limitation of Liabilities in International Air Law* 311 (1954), was rejected in *Corocraft* in favor of requiring inclusion of only the commercially substantial particulars. *Corocraft*, [1969] 1 Q.B. at 654.

Further illustrating the ambiguity of the relevant provisions, Dimsa translates these subsections to mean that to conform with Article 8, a waybill must contain each of the first two particulars stated in each subsection and then a choice between the remaining two particulars in each subsection. Thus, according to Dimsa the subsections should be read as follows: (h) The number of packages *and* the method of packing *and either* the particular marks or numbers upon them; (i) The weight *and* the quantity *and either* the volume or dimensions of the goods. We see no direct support for this reading, and it is not the most natural interpretation of the French. The ability to derive these myriad interpretations from the original French reinforces *Exim*'s conclusion that subsections (h) and (i) are ambiguous. We note that *Exim*'s resolution of the ambiguity gives meaning to the subsections by recognizing the importance of the different particulars in different contexts such that all are used, depending on the situation.

■ Even after *Chan*, the Supreme Court has recognized that certain provisions of the Convention are unclear. *Floyd*, — U.S. at — – —, 111 S.Ct. at 1493–1501 (phrase "lesion corporelle" held ambiguous, so treaty interpretation techniques used). *Cf. Chan*, 490 U.S. at 134, 109 S.Ct. at 1683–84 (interpretive methods "may of course be consulted to elucidate a text that is ambiguous"). We find no distinction between the process utilized in *Floyd* and that used in *Exim* and the cases on which *Exim* relied. *See Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8 (2d Cir.1990) (reaffirming, after *Chan*, holding in *Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir.1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976), that portion of Article 17 is ambiguous, and applying test set forth in *Day* to determine whether passenger was "in the course of any of the operations of embarking or disembarking"). There being no basis for Dimsa's claims that the language of subsections (h) and (i) is clear or that *Exim* was overruled, we abide by *Exim*'s holding that unless omission of a particular is commercially substantial or significant and

prejudicial to the consignor, it need not be included in the air waybill for the carrier to avail itself of Article 22(2)'s limitation on liability.

### B. *Commercially Insubstantial or Insignificant and Nonprejudicial*

■ We turn to the question of whether the district court erred in holding the omitted items in this case to be commercially insubstantial or insignificant and nonprejudicial. The most important particular to be specified is the weight, because "weight may assist the [consignor], not only in checking the rate, but also in calculating the carrier's liability for loss." *Exim*, 754 F.2d at 108; *Corocraft*, [1969] 1 Q.B. at 654 ("[A]s a matter of commercial practice, the weight is usually the thing that matters."); *Maritime Ins.*, 769 F.Supp. at 129 (omission of volume and dimensions not commercially significant when weight listed). *But cf. Republic Nat'l Bank*, 815 F.2d at 237–38 (holding lack of weight on baggage claim check not commercially substantial or prejudicial "under the facts of this particular case," because passenger knew he could not recover value of cargo under Convention). The Dimsa waybills included weight, allowing Dimsa to calculate its recovery under the Convention based on the $20 per kilogram rate. From that information Dimsa could determine whether to declare a greater value for the goods, Warsaw Convention Art. 22(2), or to purchase insurance in order to avoid the limitation of liability.

■ The nature of the shipment determines which omitted particulars are commercially substantial or significant and prejudicial to the consignor and hence required to be included. *Exim*, 754 F.2d at 108. In *Exim*, the carrier lost two shipments of Indian silk blouses being shipped from India to New York. The first waybill at issue in *Exim* failed to describe the method of packing or indicate numbers on the packages. The second *Exim* waybill omitted both the volume and the dimensions of the cargo. *Id.* These omissions are substantively identical to the omissions from the waybills at issue here. The way-

bills in this case listed the number of pieces but omitted the method of packing, and the particular marks or numbers on the packages per subsection (h). Of the subsection (i) particulars, the waybills listed the weight and quantity but omitted both the volume and the dimensions of the goods. As to the particulars found in *Exim* to be commercially insubstantial or insignificant and nonprejudicial that were also omitted here, we see no difference between their omission from the Dimsa and *Exim* waybills. Like the VCRs here, the blouses in *Exim* were packed in cartons and we can discern no reason to treat the shipments differently simply because VCRs weigh more than silk blouses or because the Dimsa shipment had more units, factors which the waybills took into account. Dimsa does not offer any reason why its shipments required inclusion of the omitted particulars from a commercial or prejudice standpoint when the *Exim* waybills did not. In the absence of any substantial contradictory evidence, we are inclined to credit the assertions in Ladeco's affidavits that those particulars lack commercial significance although we do not hold that the particulars omitted here would not lack commercial significance in other circumstances. With regard to the omission of subsection (h)'s "particular marks on the packages", something not addressed in *Exim*, no commercial necessity appears to require inclusion of marks in this case. All the VCRs in these shipments were in identical boxes, so identification, a possible rationale for requiring inclusion of this particular on the waybills, was not a problem. Indeed, Dimsa does not even allege that the packages themselves had "particular marks" on them. Thus, as the omissions from the waybills were commercially insubstantial or insignificant and nonprejudicial and therefore not mandatory under Article 8 of the Convention, Article 9 was not violated and the district court properly denied summary judgment.

We have considered Dimsa's remaining arguments and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the order of the district court denying Dimsa's motion for partial summary judgment is affirmed.