The LIMITED, INC. et al., Plaintiffs,

v.

AIR CARGO INC., et al., Defendants.

No. C–2–98–1110.

United States District Court,
S.D. Ohio,
Eastern Division.

March 30, 2001.

Juan Jose Gonzales Perez, Perez & Morris, Columbus, OH, for Plaintiffs.

John Curtis Albert, Crabbe Brown & James, Columbus, OH, John E. Martindale, Gallagher Sharp Fulton & Norman, Cleveland, OH, for Defendants.

### OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiffs assert claims based on loss of goods in shipping. The parties have filed cross motions for summary judgment (Docs. 38, 42, and 46). Defendants also move to strike affidavits plaintiffs offer in support of their own summary judgment motion, and in opposing defendants' motions. For the reasons that follow, the Court grants defendants' motions.

### I. FACTS

Plaintiffs, Limited Distribution Services, Inc.("Limited Distribution") and Express, LLC ("Express"), are wholly owned subsidiaries of The Limited, Inc. Express hired Limited Distribution to arrange for the transportation of 20,450 ladies knit shirts from exporter Sungdo Textile Co., Ltd. ("Sungdo"), in Seoul Korea to Columbus, Ohio.

On October 30, 1996, Sungdo issued its commercial invoice to Express for the 20,-450 shirts, for a total of 342 cartons, based on the invoice and purchase order. Kintetsu World Express (Korea), Inc. ("Kintetsu Korea") was hired to ship the order to Express as consignee c/o Freight–A–Ranger in Columbus, Ohio.

Kintetsu Korea issued an air waybill number KWE–7208191, indicating that the cargo was received on October 30, 1996 comprised of 342 sealed cartons said to contain 20,450 pieces of clothing. The Kintetsu Korea air waybill indicates that the shipment would be transported by Air Canada Air Lines, flight AC 898 from Seoul, Korea to Toronto Airport with a final destination of Columbus, Ohio, and an estimated time of arrival on November 4, 1996. The Kintetsu Korea air waybill lists no declared value for carriage.

Kintetsu Korea consolidated the order with two additional orders, one containing 24 cartons of baby hats, and the other containing 22 cartons of knit tights. The 342 cartons at issue were placed on two different pallets, the first, PMC7315AC, containing 218 cartons, and the second, PM9207AC, containing the remaining 124 cartons plus the 46 cartons from the additional orders.

On November 3, 1996, defendant Air Canada Cargo issued its air waybill 014–81602382 indicating that shipper Kintetsu Korea was shipping to consignee defendant Kintetsu World Express (USA), Inc. ("Kintetsu USA") via Air Canada, the 388 cartons mentioned above. The Air Canada air waybill contained no declared value.

On November 3, 1996, the shipment arrived at the Toronto Airport and was loaded on a truck owned by independent

trucking contractor Tro–Air. The Tro–Air driver signed a trucking service invoice indicating he received 388 cartons on the same two pallets referenced above. The following handwritten notice appears on the invoice:

One Box split open & contents were given to Driver. Boxes loose on Pallet.

On November 4, 1996, the shipment went through customs at Port Huron, Michigan, and the U.S. Custom Service manifest documented 388 cartons in the shipment. The customs manifest states no exceptions to the assumption that the packages were in apparent good order. On November 5, 1996, the U.S. Custom service at the Freight–A–Ranger location, under the name of Circle Int'l, Inc., noted the location of the goods at Freight–A–Ranger, and the receipt of 342 cartons.

On the following day, November 6, 1996, Freight–A–Ranger completed its receiving work sheet noting that two pallets of items were received as well as some items in "bulk." After a final counting was conducted concerning the shipment, Carolyn Roberts, former employee of Freight–A–Ranger, completed a discrepancy report on November 7, 1996. Roberts indicated that only 327 of the 342 cartons were delivered, leaving 15 cartons unaccounted for. Roberts discrepancy report was later changed, for an unknown reason, to indicate that 25 cartons were missing.

## II. SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When reviewing a summary judgment motion, the Court must view all of the evidence in the record. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). The Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Id.* Although the Court views the entire record, it disregards all evidence favorable to the moving party that the jury is not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identified a number of important

principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348).

### III. DISCUSSION

#### A. Lack of Evidence that Defendants Lost Goods

Plaintiffs assert that defendants' air waybills were absent any indication that it did not receive the entire shipment of merchandise, therefore defendants must be responsible for losing the 25 missing cartons during transport. (Doc. 42). Defendants respond by arguing plaintiffs failed to meet their prima facie burden of demonstrating defendants are responsible for the alleged lost merchandise. (Doc. 38). Defendants contend that all 388 cartons were documented and accounted for at the time of delivery by Tro–Air, one day later by U.S. Customs, and then later by Freight–A–Ranger when it initially received the shipment. *Id.*

■ The Court finds that plaintiffs' evidence would leave a reasonable jury to speculate whether defendants are responsible for the alleged loss of merchandise.

In the face of defendant's evidence, plaintiff's evidence is no more than a scintilla. Plaintiffs evidence consists of a single discrepancy report, completed by Freight–A–Ranger, indicating 25 cartons were missing from the shipment. This questionable evidence is insufficient to hold the defendants liable for damages considering the accuracy of the report, and the uncontroverted practices of Freight–A–Ranger when unloading cargo. The report was changed from denoting 15 missing cartons to 25 by an unknown person for an unknown reason as Carolyn Roberts, the Freight–A–Ranger employee who originally filed the discrepancy report testified.

The unloading practices of Freight–A–Ranger also jeopardizes the validity of plaintiffs' claim. The uncontroverted evidence concerning Freight–A–Ranger shows it did not actually count the goods it received until two days after it was delivered to the warehouse. The shipment in question was received at Freight–A–Ranger on November 4, 1996, and no discrepancies were noted upon acceptance of the goods. The next day it was again noted that 342 cartons were received by Freight–A–Ranger. It was not until November 7, 1996, when Carolyn Roberts finally completed a discrepancy report that 15 cartons were reported missing and that number was unknowingly changed to denote 25 missing cartons. In addition, another portion of the shipment was placed in the "bulk" section of the warehouse and accounted for at a later date. So based on the evidence before the Court, it is unclear as to when the goods were allegedly lost, and whether they were lost at all. Therefore, based on plaintiffs' lack of evidence, the Court finds there is insufficient evidence for a reasonable jury to return a verdict for the plaintiffs and, thus, grants defendants' summary judgment.

## B. Warsaw Convention Limitation of Liability

Plaintiffs contend defendants failed to comply with the requirements contained in Articles 8 & 9 of the Warsaw Convention. (Doc. 42). Plaintiffs assert defendants accepted an air waybill that did not include all of the particulars required in Article 8 and therefore relinquished its right to limited liability under Article 22(2) of the Warsaw Convention. *Id.* Defendants respond by arguing that plaintiffs neglected to declare a special value for the goods transported and that the air waybill did contain the requisite language needed to restrict liability under the Warsaw Convention. (Docs. 38 & 49). Consequently, defendants contend that plaintiffs should be limited in their damages to the amount established in Article 22(2) of the Warsaw Convention. *Id.*

The Warsaw Convention "shall apply to all international transportation of...goods performed by aircraft for hire." Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, art. 1(1), 49 Stat. 3000. ("Warsaw Convention"). "When transported goods are lost or damaged, the Convention presumes the carrier liable, but limits the permissible amount of recovery." *Distribuidora Dimsa v. Linea Aerea Del Cobre S.A.,* 976 F.2d 90, 93–94 (2d Cir.1992). Article 22(2) of the Warsaw Convention states:

> "In the transportation of...goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires."

Warsaw Convention art. 22(2).

In order for the carrier to be eligible for limited liability protection it must accept goods with an air waybill containing all of the particulars established in article 8(a) to (i) including (q). *Id.* at art. 9. Article 9 establishes that if the carrier accepts goods without an air waybill containing all of the essential particulars, "the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability." *Id.* However, the Second Circuit Court of Appeals has granted an exception to this rule by holding, "Article 9 is not violated by the omission of commercially insubstantial or insignificant and nonprejudicial particulars from air waybills." *Distribuidora Dimsa,* 976 F.2d at 93, (citing Exim Indus., Inc. v. Pan American World Airways, Inc., 754 F.2d 106 (2d Cir.1985)).

In *Dimsa,* plaintiffs contracted with defendant for the shipment of video cassette recorders ("VCRs") from Florida to Chile. Defendant filed separate air waybills for the two shipments but neglected to record the particulars from subsections (h) and (i). After the shipments were delivered, plaintiff filed a complaint alleging some of the VCRs were damaged and missing. Defendant claimed limited liability in its answer, but plaintiff argued defendant was not entitled to limited liability because it did not fully record all of the necessary particulars on the air waybills. The Court held that the absent particulars were commercially insubstantial and nonprejudicial, finding defendant qualified for limited liability under the Warsaw Convention.

██ In these circumstances, plaintiffs contend that defendants air waybill failed to include Article 8(q), "a statement that the transportation is subject to the rules relating to liability established by this convention." Warsaw Convention art. 8(q). Plaintiff asserts that because the shipper's signature was missing the terms of the completed air waybill were not accepted

and cannot be enforced. The Court does not agree with plaintiffs' argument.

It is clear from the terms and conditions of the air waybill that it was meant to be controlling and limit defendants potential liability. Defendants completed all of the essential particulars listed on the air waybill, but neglected to sign the statement certifying the particulars as correct. The Court will not void the enforcement of the air waybill based on the argument that it is invalid because the shipper failed to sign it. Like the holding in *Dimsa*, the Court finds the omitted signature was "commercially insubstantial", "insignificant" and "nonprejudicial" to the completed particulars of the air waybill and defendants are eligible for the defense of limited liability under the Warsaw Convention. 976 F.2d at 93.

It is also sufficiently clear that based on the language on the backside of the air waybill the parties agreed to submit to the rules of the Warsaw Convention. The language on the air waybill sets out the conditions of the contract and limits the defendants liability in conformance with the Warsaw Convention. The air waybill specifically mentions the Warsaw Convention and that defendants intent to be limited in their liability under the terms of the contract. Therefore, the Court finds this dispute is governed by the rules of the Warsaw Convention and any potential liability of the defendants is limited pursuant to Rule 22(2).

## C. Kintetsu USA

Plaintiffs contend they contracted with Kintetsu World Express, Inc., for the carriage of their goods from Seoul, Korea to Columbus, Ohio. (Doc. 42). Pursuant to the terms of the contract Kintetsu World Express, Inc., was responsible to arrange for the transport of the goods and was liable for its safe delivery to Columbus. *Id.* Plaintiffs allege Kintetsu World Express, Inc., contracted with Air Canada to transport the goods, but still remained liable as the shipper and consignee on Air Canada's waybill. *Id.* The shipment allegedly arrived in Columbus missing 25 cartons. *Id.* Plaintiffs argue Kintetsu World Express, Inc., breached its contract for carriage and is liable for the damages from the lost merchandise. *Id.*

Defendant Kintetsu USA denies having any contractual relationship with the plaintiffs. (Doc. 46). It asserts that plaintiffs have failed to produce any evidence proving the parties entered into a contract with each other, rather plaintiffs evidence indicates they contracted with Kintetsu World Express, (Korea) Inc. Kintetsu USA contends it is a wholly owned and separate subsidiary from Kintetsu World Express, (Korea) Inc., and that it was improperly named in this suit. *Id.* Kintetsu USA argues that it was not hired to transport the goods and never handled or received the goods and therefore is not liable for damages from the missing cartons. *Id.*

Based on the evidence produced by plaintiffs, the Court finds that a reasonable jury could not hold Kintetsu USA responsible for plaintiffs alleged lost goods. Plaintiffs failed to produce any evidence showing that it entered into a contract with Kintetsu USA for the transport of its goods. To the contrary, plaintiffs attach an air waybill to their memorandum in opposition to defendants summary judgment that identifies Kintetsu World Express (Korea), Inc., as the carrier. (Doc. 42, Tab A, Exhibit 3). Plaintiffs assert that because Kintetsu USA is a consignee on an air waybill they are liable for the damages caused by Kintetsu World Express (Korea), Inc. *Id.* at Exhibit 5. Even as consignee to this transaction, however, Kintetsu USA had no contact with the goods and should not be liable for its safe transportation.

Plaintiffs allege Kintetsu USA is one global company and responsible for the contracts of Kintetsu World Express (Korea), Inc., however plaintiffs fail to provide *any evidence* to support this conclusive statement. Kintetsu USA and Kintetsu Korea are wholly-owned subsidiaries of Kintetsu World Express, Inc., these are separate corporations, incorporated under laws of different countries and therefore cannot be substituted as a defendant for the other one. Therefore, the Court finds Kintetsu USA cannot be held liable for the alleged breach of contract by Kintetsu Korea.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** defendant's summary judgment motions and **DENIES** plaintiffs' summary judgment motions.

The Clerk shall enter final judgment in favor of defendants, and against plaintiffs, dismissing this action in its entirety with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Docs. 38, 42, and 46 from the Court's pending motions list.

**IT IS SO ORDERED.**